UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   4/15/15
```

---------------------------------------

ORLANDO RIVERA,

                     Plaintiff,

        -against-

ERIC RAMOS, et al.,

                   Defendants.

---------------------------------------

13cv07785 (AT) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE ANALISA TORRES, U.S.D.J.:**

In this action under 42 U.S.C. § 1983, *pro se* plaintiff Orlando Rivera ("Plaintiff") alleges

that, while detained at the Otis Bantum Correctional Center on Rikers Island, officers at the

facility were deliberately indifferent to his serious medical needs and he was subjected to the

excessive use of force, causing significant injuries.  (*See generally* Complaint, dated Oct. 21,

2013 ("Compl.") (Dkt. 2).)[1]  Since the date when this action was filed, Plaintiff has, at times,

demonstrated a seemingly sincere interest in pursuing his case, but the Court has now heard

nothing from him for several months and is unaware of his current whereabouts.  In light of

Plaintiff's history of nonappearance at conferences and the number of times that the Court has

warned him of the potential consequences of failing to participate fully in the action, the Court

would be perfectly justified in dismissing this case at this point, for failure to prosecute.

Plaintiff's allegations, however – particularly his allegations regarding the excessive use of

---

[1] Plaintiff filled out a form Section 1983 Complaint (*see* Dkt. 2, at pp. 1-7), to which he
attached handwritten pages that he separately titled "Plaintiff's Second Amended Complaint"
(*see id.*, at p. 8).  The Court considers these documents, taken as a whole, to constitute Plaintiff's
Complaint in this action, but, unless stated otherwise, all citations herein are to the handwritten
attachment, which is where Plaintiff has detailed his factual allegations.

force – are quite troubling, and this Court is concerned that personal circumstances outside of Plaintiff's control may have prevented him from prosecuting the action.

Given that, due to the running of the statute of limitations, even a dismissal without prejudice would likely result in the forfeiture of Plaintiff's Section 1983 claims, and given the serious nature of his allegations, as set forth in greater detail below, I recommend that, instead of immediate dismissal, this case be stayed and held in abeyance for a limited period of time. Specifically, I recommend that the case be stayed until October 15, 2015 (which would be six months from the date of this Report and Recommendation, and one year from Plaintiff's last communication with the Court), to give Plaintiff a final opportunity to return to Court to litigate his claims. I further recommend, though, that the Court proceed to dismiss the case without prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, if by October 15, Plaintiff has still made no contact with either Defendants' counsel or the Court.

## BACKGROUND

### A.    Plaintiff's Allegations

In his Complaint, Plaintiff alleges that, on February 6, 2012, officers sought to remove him from his cell by handcuffing him in the rear, despite a medical order that he was supposed to be handcuffed in front. (Compl. ¶¶ 9-12 of form pleading.)  When, according to Plaintiff, he tried to explain this (including by producing a copy of the medical order), one of the officers – defendant Captain Simpson ("Simpson") – allegedly "became belligerent, hostile, and irrational," and informed Plaintiff that, if he did not allow himself to be handcuffed in the rear, then, by order of the officer's supervisor – defendant Deputy of Security Eric Ramos ("Ramos") – Plaintiff would be extracted from his cell by force. (*Id.* ¶¶ 13-21.)

2

Plaintiff alleges that a "probe team" of officers was then assembled outside of his cell, at which time Simpson allegedly said that he had been directed by Ramos "to cause serious physical injury to 'make an example of [Plaintiff].'"  (*Id.* ¶¶ 22-23.)  The officers then allegedly entered Plaintiff's cell, and proceeded to restrain Plaintiff on the ground and then assault him.  (*Id.* ¶¶ 24-27.)  Plaintiff alleges that, while he was restrained, Simpson repeatedly struck him in the face with a closed fist, "causing severe swelling and trauma," and then "stuck a finger into the same eye socket and attempted to pull [Plaintiff's] eye out," causing serious damage to Plaintiff's vision, as well as severe pain.  (*Id.* ¶ 25.)  Plaintiff also alleges that he heard one of the officers – defendant Correctional Officer Mundy ("Mundy") – state that he was "going to break [Plaintiff's] foot," and that Mundy, in fact, twisted Plaintiff's foot to the point where Plaintiff suffered a fracture.  (*Id.* ¶ 26.)  Plaintiff also alleges that he was punched and kicked in the ribs and lower back, while in mechanical restraints.  (*Id.* ¶ 27.)  Plaintiff seeks compensatory damages for his injuries, as well as punitive damages.  (Id. ¶ 45, 48.)

### B.      **Procedural History**

#### 1.      **Initial Case Management Conference, Held While Plaintiff Was Incarcerated**

When Plaintiff commenced this action, he was incarcerated at a state correctional facility.  (*See* Compl., at pp. 1, 7.)  After the case was referred to this Court for general pretrial supervision, this Court, on March 26, 2014, held an initial case management conference by telephone, and Plaintiff participated in that conference.  (*See* Transcript of Conference (Dkt. 20).)  Plaintiff also wrote to the Court in April 2014, requesting a discovery extension and asking for guidance on certain litigation matters.  (*See* Letter to the Court from Plaintiff, dated Apr. 16, 2014 (Dkt. 22).)  In his correspondence, Plaintiff evinced a clear intent to prosecute this

action, stating, among other things, "I truly [sic] appreciate the court[']s assistance in this important matter and wish to hear from you as soon as may be possible." (*Id.*, at 2.)

## 2. Plaintiff's Repeated Failures To Appear at Court Conferences, After His Release From Custody

On or about May 5, 2014, Plaintiff was released from custody, after which he did not participate reliably in proceedings scheduled by the Court, seemingly because of a lack of stability in his housing situation and sometimes serious medical problems, arising at least in part from substance abuse. The first evidence of Plaintiff's difficulties came on May 20, 2014, when Plaintiff failed to appear for an in-person case management conference that the Court had scheduled for that date, at 10:00 a.m. (*See* Dkt. 20, at 19.[2]) At approximately 10:45 a.m. on that date, after the Court had already adjourned the conference due to Plaintiff's non-appearance, my Chambers received a telephone call from Plaintiff, apparently made from a courtesy phone in the Court Clerk's Office. In that call, Plaintiff reported that he had been living in a shelter and that

---

[2] At the March 26, 2014 telephone conference, the following colloquy took place:

> THE COURT: Let me set a follow-up telephone call date for a status conference like this one, see how it's going. How about in May?
> MR. RIVERA: I will be home for May.
> THE COURT: You will be out?
> MR. RIVERA: Yeah, I will be home May 5.
> THE COURT: That's your release date?
> MR. RIVERA: Yes. It's my max-out.
> THE COURT: So, you know what? Why don't we do an in-person conference then instead after that.
> MR. RIVERA: Okay.
> THE COURT: You can get to the court?
> MR. RIVERA: Of course.
> THE COURT: I will have you come in. I will have counsel come in. Let me look at my calendar. May 20 at 10:00 o'clock in the morning.
> MR. RIVERA: May 20 at 10:00 a.m.

(Dkt. 20, at 18-19.)

4

he was late to Court because the residents were being transferred that day to a different shelter. Plaintiff further informed the Court that, although he was not living with his wife,[3] he preferred to receive mail at her address.  My Chambers instructed Plaintiff to go to the *Pro Se* Office to file a change-of-address form, and also informed Plaintiff that it would reschedule the case management conference for 12:30 p.m. on that same day.  Plaintiff, however, did not file the change-of-address form, and, at 12:30 p.m., he again failed to appear.

On June 2, 2014, this Court issued a Scheduling Order (Dkt. 23), rescheduling the May 20 conference to June 12, 2014, directing Plaintiff to appear at that time, and specifically instructing him that, if he were unable to attend the June 12 conference, then he should write to the Court (via the *Pro Se* Office) and to Defendants' counsel, in advance of that conference date, to explain why he could not appear.  The June 2 Order further instructed Plaintiff that he was required to keep the Court apprised of his current contact information,[4] and cautioned him that, if he failed to appear in Court for a third time, after having been directed to do so by the Court, or if he failed to keep the Court apprised of changes to his address, then this Court might recommend that this case be dismissed without prejudice for failure to prosecute.  Despite this,

---

[3] It is the Court's understanding that, although Plaintiff may not have been formally married, he had a fiancée or common-law wife, and, as Plaintiff referred to her as his "wife," this Court will do the same herein.

[4] The Court mailed its June 2 Order to an address on Emerson Place, in Brooklyn, New York, which was provided to the Court by Defendants' counsel on May 20, 2014, at the conference that Plaintiff failed to attend.  According to Defendants' counsel, he had asked Plaintiff, following the parties' earlier conference call with the Court, for an address and telephone number where he could be reached after his release from custody, and Plaintiff had provided that Emerson Place address, together with a telephone number. (*See* Dkt. 25.)  Based on statements later made by Plaintiff to the Court, it is the Court's understanding that the Emerson Place address was his wife's address.

5

Plaintiff failed to appear at the scheduled June 12 conference, and did not provide the Court with any updated contact information.

Although this Court then informed Defendants' counsel that, based on what was, by then, Plaintiff's third failure to appear, the Court would likely recommend dismissal of the action without prejudice, the Court first asked counsel to set out, in writing, the extent of its efforts to locate and communicate with Plaintiff. In response to the Court's request, Defendants' counsel first informed the Court, by letter dated June 19, 2014 (Dkt. 25), that, following the June 12 conference at which Plaintiff failed to appear, counsel had sent a letter to Plaintiff at the Emerson Place address, instructing him to contact counsel's office upon receipt (*id.*, at 2). Counsel also represented that he had called the telephone number that Plaintiff had provided (*see supra* at n.4), but that no one answered, and there was no voicemail prompt (*see* Dkt. 25, at 2). Counsel further informed the Court, however, that, on June 16, 2014, he had received a voicemail message from a woman identifying herself as "Ms. Esteves," who said that she was Plaintiff's fiancée, and who stated that she could be reached at the same telephone number that Plaintiff had provided. (*Id.*) Counsel indicated that he then was able to reach Ms. Esteves by phone, and that she informed him that (1) Plaintiff had been staying at a homeless shelter, and that (2) since June 7, 2014, he had been hospitalized in the Intensive Care Unit ("ICU") of Brooklyn Hospital. (*Id.*) Counsel also informed the Court that, upon inquiry made by counsel on June 16, Brooklyn Hospital had confirmed that a patient with Plaintiff's name was indeed hospitalized there, in the ICU. (*See* Dkt. 25.)

According to Defendants' counsel, Plaintiff himself then called counsel on June 23, 2014, stating that he was still at Brooklyn Hospital, but would be released shortly. (*See* Dkt. 26, at 2.) Counsel informed the Court that he instructed Plaintiff to update his address with the Court's

*Pro Se* Office and to submit a letter to the Court, explaining why he had missed the Court conferences (*see id.*), but Plaintiff did not do so.   By letter dated July 28, 2014, Defendants' counsel requested that this Court recommend that Plaintiff's claims be dismissed without prejudice, for failure to prosecute.  (Dkt. 26.)

On August 22 and 24, my Chambers tried to reach Plaintiff through the phone number that counsel had provided for Ms. Esteves, but, both times, the phone rang repeatedly with no answer.  Nonetheless, and despite Defendants' request for a recommendation of dismissal, this Court determined that, under the circumstances that counsel described – suggesting that, after his incarceration, Plaintiff was living in a homeless shelter and then, for at least some time, was apparently hospitalized in intensive care – Plaintiff should be given another opportunity to demonstrate that he wished to proceed with this case.  Thus, by Scheduling Order dated September 4, 2014 (Dkt. 29), the Court directed Plaintiff to appear for a conference on September 23, 2014, again instructing Plaintiff that, if he were unable to attend the conference, he should provide the Court and Defendants' counsel with a written explanation.  The Court also reminded Plaintiff again of his obligation to keep the Court apprised of his current contact information.[5]  The Court also expressly cautioned Plaintiff that, if he failed to appear in Court for a fourth time, or failed to keep the Court apprised of changes to his address, then this Court would likely recommend that the case be dismissed for failure to prosecute.

---

[5] On August 26, 2014, prior to issuing the September 4 Order, my Chambers again called the telephone number for Plaintiff that Defendants' counsel had provided.  (*See* n.4, *supra*.)  This time, my Chambers reached a woman, presumably Plaintiff's wife, and informed her that a scheduling order would be sent to the Emerson Place address.  (*See id.*)  This Court then mailed a copy of its September 4 Order to Plaintiff, at that address.

### 3.     The September 23, 2014 Conference

Plaintiff apparently received the Court's September 4 Order through his wife, as he –

together with his wife – appeared for the September 23 conference, although he arrived for the

conference approximately 50 minutes late.  At the conference, this Court spent a good deal of

time addressing Plaintiff's prior failures to participate in the action, and explained his

obligations, should he wish to proceed with the case.  Plaintiff stated at the conference that, since

his release from prison, his "whole world ha[d] been chaos," that he had been hospitalized with a

drug overdose, and that he was planning to commence a 28-day rehab program.  He also stated

that he was living, at that time, in "transitional" housing, referred to as a "three-quarters house."

He did not provide an address or telephone number for that residence, insisting instead that, as he

spoke to his wife every day, the best way for him to be contacted would be by mail to his wife's

Emerson Place address.  Plaintiff confirmed that he wished to proceed with his case, but stated

that he no longer had copies of any of his legal papers, including any of the materials that had

been served on him while he was incarcerated.

The Court provided Plaintiff with a copy of his Complaint and directed Defendants to

serve him with another set of their initial disclosures and interrogatories.  The Court instructed

Plaintiff to respond to those interrogatories and set a schedule for fact discovery, with a

follow-up, in-person conference on November 19, 2014.  The Court stressed to Plaintiff that his

failure to appear, to keep the Court informed of his contact information, or to provide any

explanations as to why he could not meet deadlines could result in the dismissal of his case for

failure to prosecute.  The Court also cautioned Plaintiff that, even if a dismissal of his action

were "without prejudice," this would not stop the statute of limitations from running, and warned

him that he might be facing a three-year limitations period on his claims.  The Court gave

8

Plaintiff information regarding the Court's *Pro Se* Office, urging him to visit the Office as
needed and instructing him to communicate with the Court through that Office.

On October 2, 2014, this Court issued a Scheduling Order (Dkt. 29) memorializing the
discovery deadlines set at the September 23 conference. In its written Order, the Court once
again instructed Plaintiff that, if he were unable to attend the next-scheduled November 19, 2014
conference, then he should write to the Court with an explanation. The Court also again
expressly instructed Plaintiff that he was required to keep the Court apprised of his current
contact information and inform the Court of any changes thereto. In addition, the Court's
October 2 Order stated:

> Given Plaintiff's history of failing to appear for scheduled
> conferences (*see* prior Orders of this Court, dated June 2, 2014
> (Dkt. 23) and September 4, 2014 (Dkt. 28)), Plaintiff is again
> cautioned that, if he fails to appear in Court after being directed to
> appear, if he fails to keep the Court apprised of changes to his
> address, or if he fails to participate meaningfully in the discovery
> process as ordered by the Court, then this Court may recommend
> that this case be dismissed without prejudice, for failure to
> prosecute.

(Dkt. 29, at ¶ 8 (emphasis in original).)

### 4.   **Events Subsequent to the September 23, 2014 Conference**

Plaintiff failed to appear at the November 19 conference, although, prior to that date, the
Court received a letter from him dated October 14, 2014, with a return address of St. Luke's
Roosevelt Hospital Center (Mount Sinai St. Luke's ("St. Luke's")), stating the following, in
pertinent part:

> I am presently in the hospital and cannot get assistance in having
> my paperwork notarized. However, all the info being asked [for]
> has been provided already. I am ready & willing to comply w/all
> proceedings Judge Freeman. I wish for the Court to know &
> understand this. I get released from the hospital on October 27th.

9

> Furthermore, I wish to notify the Court of a change of address. The address of 161 Emerson Place will no longer be valid. Any correspondence should be forwarded to the hospital until I acquire a P.O. Box. Thank you.
>
> Please write back informing me as to what I have to do.

(Letter to the Court from Plaintiff, dated Oct. 14, 2014 (Dkt. 30).)

After that point, and upon determining that Plaintiff had been discharged from St. Luke's (and that St. Luke's could not accept mail for him), this Court requested that Defendants' counsel make inquiries as to whether Plaintiff could be found in New York City's homeless shelter system. By letter dated December 5, 2014, Defendants' counsel informed the Court that, "[a]ccording to the Department of Homeless Services (DHS), Plaintiff last exited the Schwartz Shelter on Ward's Island on August 12, 2014, and did not provide DHS with any information regarding his next place of residence. Plaintiff has not returned to any DHS shelter since that date." (Letter to the Court from Matthew Bridge, Esq., Assistant Corporation Counsel, dated Dec. 5, 2014 (Dkt. 31).)

Before issuing this Report and Recommendation, this Court attempted to reach Plaintiff by calling the only telephone number that had ever been provided to it (*see* n.4, *supra*), but, despite two attempts (on April 14 and 15, 2015), my Chambers was unable to reach anyone at that number. Both times, the phone rang repeatedly without an answer. This Court has now heard nothing from Plaintiff since his October 2014 letter, and it is the Court's understanding that Defendants' counsel has also not heard from him and does not currently know how to contact him.

## DISCUSSION

A plaintiff has a general obligation to prosecute his case diligently and to keep the Court apprised of his current mailing address, and, if he fails to do so, the Court may dismiss the action

10

under Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982); *see also Wilson v. New York City Corp. Counsel*, No. 07 Civ. 3658 (JSR), 2008 WL 516014, at *1 (S.D.N.Y. Feb. 27, 2008) (noting that "it was plaintiff's responsibility to apprise the Court of his current address").

"A plaintiff's lack of diligence alone is enough for dismissal." *West v. City of New York*, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (citation omitted); *see also Ortiz v. United States*, No. 01 Civ. 4665 (AKH), 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002) (dismissing case for failure to prosecute where "[p]laintiff ha[d] not even fulfilled his minimal obligation to keep the *pro se* office of this Court informed of his change of address"). The Court need not even wait for a motion to dismiss, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962), and is not required to provide notice of the dismissal, *see West*, 130 F.R.D. at 524. Indeed, because district courts are "necessarily vested" with the control required "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," this Court may even dismiss an action with prejudice, where a plaintiff fails to prosecute his case. *Link*, 370 U.S. at 630-31.

In deciding whether to dismiss an action for failure to prosecute, the Court should consider: "(1) the duration of plaintiff's failures or non-compliance; (2) whether plaintiff had notice that such conduct would result in dismissal; (3) whether prejudice to the defendant is likely to result; (4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and (5) whether the court adequately considered the efficacy of a sanction less draconian than dismissal." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 63 (2d Cir. 2000) (citing *Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

In this action, Plaintiff has failed to appear several times, and he has been advised by this Court *repeatedly*, both in writing and in person, of the need to keep the Court informed of his current address.   Nonetheless, since leaving the hospital more than five months ago, Plaintiff has seemingly made no effort to contact either Defendants' counsel or the Court.   Thus, except for Plaintiff's wife's address on Emerson Place, which, in his last letter to the Court, Plaintiff explicitly stated "will no longer be valid" as an address at which he may receive mail, the Court has no address to which it can even attempt to send Plaintiff a copy of this Report and Recommendation.   Indeed, even though the Court contacted the hospital in which Plaintiff was last heard to have been a patient, checked available sources to determine whether Plaintiff may have been re-incarcerated, and reached out to Defendants' counsel to request that counsel investigate whether Plaintiff may be in the City's shelter system, the Court has been unable to uncover any information as to where Plaintiff may now be residing or how he may be reached. Without the ability to contact Plaintiff, this Court simply has no ability to manage this litigation. Further, as noted above, it is not the Court's obligation to track down a *pro se* litigant; rather, it is Plaintiff's obligation to keep the Court apprised of any changes to his address.

On the other hand, the Court understands that Plaintiff is proceeding *pro se* and that, whenever he *has* been in touch with the Court, he has expressed a desire to move forward with his case.   The Court also understands that Plaintiff has encountered difficulties in his efforts to proceed with the action, and does not wish to see Plaintiff penalized for medical problems, housing problems, or for any similar obstacles he may have faced upon his release from custody. Also, Plaintiff has made allegations of egregious constitutional violations by Rikers Island officers, and Plaintiff should be given every reasonable opportunity to try to prove and obtain relief on his Section 1983 claims.   As noted above, the dismissal of this action, even without

12

prejudice, may effectively bar him from ever receiving relief on those claims.  Based on the

allegations of the Complaint, the events that give rise to Plaintiff's Section 1983 claims occurred

in February 2012, and such claims are governed by a three-year statute of limitations.[6]  As it is

now more than three years from the date of the relevant events, Plaintiff's constitutional claims

would likely be found to be time-barred, were he to try to reassert them subsequent to dismissal.

Dismissal under Rule 41(b) would therefore be a particularly draconian measure here.  In

contrast, Defendants would not suffer significant prejudice by a delay of the action for a few

more months.

For all of these reasons, I recommend that Plaintiff's case not be dismissed, at this time.

As the action cannot proceed indefinitely, however, without Plaintiff's active participation or the

Court's knowledge of how to contact him, I recommend that, if Plaintiff does not contact

Defendants' counsel or the Court within the next six-month period, the case, at that point, be

dismissed under Rule 41(b), for Plaintiff's failure to prosecute.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Court stay these proceedings in

their entirety and hold this action in abeyance until October 15, 2015, or until Plaintiff contacts

either Defendants' counsel or the Court, whichever date is earlier.  I further recommend that

Defendants' counsel be directed to inform the Court promptly, should they hear from Plaintiff or

otherwise obtain any information regarding his whereabouts.  Finally, I recommend that, if

---

[6] In considering Section 1983 claims, courts should apply "the general or residual [state] statute [of limitations] for personal injury actions." *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens v. Okure*, 488 U.S. 235,  249-50 (1989) (alteration in original)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Accordingly, "New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs Section 1983 actions in New York." *Ormiston*, 117 F.3d at 71.

Plaintiff receives notice of the Court's decision through any means (whether through his wife,[7]

by checking the public docket of this case, or otherwise), then he be directed to contact the Court

immediately, through the Court's *Pro Se* Office, to inform the Court (a) of an address and

telephone number, if any, whereby he may be reached, and (b) whether he wishes to proceed

with this lawsuit.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall

be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the

Honorable Analisa Torres, United States Courthouse, 500 Peal Street, Room 2210, New York,

NY 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 1660, New York, NY 10007. Any requests for an extension of time for filing objections

should be directed to Judge Torres. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS

WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE

REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v.*

*Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.

---

[7] Despite Plaintiff's statement that his wife's address would no longer be a valid service address for him, this Court has taken the liberty of mailing this Report and Recommendation to that address, as it has no other viable alternative for service.

14

1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       April 15, 2015

                              SO ORDERED

                              DEBRA FREEMAN
                              United States Magistrate Judge

Copies to:

Mr. Orlando Rivera
161 Emerson Place, Apt 4A
Brooklyn, NY 11205

Defendants' counsel (via ECF)